UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA M., an individual,<br><br>        Plaintiff,<br><br>  v.<br><br>WILLIAM NULICK, an individual; TULARE COUNTY SHERIFF, a California governmental entity; COUNTY OF TULARE, a California governmental entity; and DOES 1 to 50, inclusive,<br><br>        Defendants. | No. 1:15-cv-01386-JAM-SAB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE** |

    Tulare County Sheriff's Deputy and defendant William Nulick ("Nulick") allegedly exploited his position as a police officer by sexually assaulting plaintiff Alma M. ("Alma"). At issue in this motion is whether Nulick's employers, defendants County of Tulare ("Tulare") and Tulare County Sheriff ("Sheriff") (collectively "Defendants") are vicariously liable for Nulick's abuse and subsequent efforts to cover-up his wrongdoing. Defendants seek to dismiss and/or strike the ninth, tenth, eleventh and twelfth causes of action of Alma's complaint

1

1    pursuant to Federal Rules of Civil Procedure ("Rule") 12(b) and
2    12(f).  For the reasons stated below, the Court grants in part
3    and denies in part the motion.[1]

5        I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND
6        The Court takes the following facts as true for purposes of
7    this motion.
8        On October 4, 2013, Alma was driving on Highway 384 near
9    Dinuba, California, when Tulare County Sheriff's Deputy William
10   Nulick pulled over her car.  Compl. ¶ 12.  After Alma failed to
11   produce her license and registration, Nulick ordered Alma to step
12   out of the car.  Id. ¶¶ 13-14.  Nulick proceeded to grope Alma's
13   breasts, vagina, and buttocks.  Id. ¶ 16.  Nulick then threatened
14   to arrest Alma and stated that he wanted to have sex with her in
15   exchange for not arresting her or issuing her a ticket.  Id. ¶¶
16   17-18.  Alma began to cry and said "No."  Id. ¶ 19.  Nulick
17   responded by telling her she had five minutes to decide whether
18   to be arrested or to have sex with him.  Id. ¶ 20.

19       Frightened for her life and wellbeing, Alma followed Nulick
20   to an orchard in a secluded area off of interstate 384.  Id. ¶
21   21.  Nulick told Alma that he wanted to have vaginal sex with
22   her.  Id. ¶ 22.  Alma refused.  Id.  Nulick then pulled out his
23   erect penis and pushed Alma's head down to his penis, forcing
24   Alma to perform oral sex on him until he ejaculated in her mouth.
25   Id. ¶¶ 23-24.  Alma spit out the semen and wiped her mouth with a

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for April 5, 2016.

Kleenex. Id. ¶ 25. Nulick took the soiled Kleenex from Alma to conceal the evidence and told her she was free to go. Id. ¶ 26. Alma reported the incident the next day. Id. ¶ 27.

Alma's complaint contains the following twelve causes of action: (1) assault; (2) battery; (3) sexual battery; (4) false imprisonment; (5) intentional infliction of emotional distress ("IIED"); (6) violation of civil rights 42 U.S.C. § 1983 ("Section 1983"); (7) intentional violation of civil rights – Monell; (8) violations of civil code § 52.1; (9) violations of the Unruh Act; (10) negligent hiring and supervision; (11) negligent training; and (12) negligent infliction of emotional distress ("NIED"). The first through ninth and the twelfth causes of action are brought against all defendants, while the tenth and eleventh causes of action are brought only against Sheriff and Tulare.

Defendants move to dismiss and/or strike the ninth cause of action for violation of the Unruh Act. Mot. at 4-6; the tenth and eleventh causes of action because there is no statutory basis for these claims or, alternatively, because they are duplicative. Id. at 6-7; and the twelfth cause of action for failure to state a claim upon which relief can be granted. Id. at 7-8. Alma opposes the motion in its entirety (Doc. #24).

## II. OPINION

A. Analysis

   1. Unruh Act

Alma's ninth cause of action for violations of the Unruh Act alleges that Defendants "denied full and equal accommodations, advantages, facilities, privileges and/or

3

1  services to Plaintiff" because of Alma's "sex, race, ancestry,
2  and/or national origin." Compl. ¶¶ 104-105. Defendants seek
3  dismissal of this claim for two reasons. First, Defendants
4  argue that they cannot be liable under the Unruh Act because
5  that law applies only to "business establishments" and Sheriff
6  and Tulare are not business establishments. Mot. at 4-5.
7  Second, Defendants argue that Alma fails to allege "any conduct
8  preventing her from accessing public accommodations," which is
9  also required by the Unruh Act. Id. at 5-6. Alma argues in
10 opposition that Nulick was a "member of an establishment" that
11 discriminated against her based on her sex in a way that denied
12 her equal accommodations. Opp. at 7.
13      The Unruh Act entitles all individuals to "full and equal
14 accommodations, advantages, facilities, privileges, or services
15 *in* all business establishments of every kind whatsoever." Cal.
16 Civ. Code § 51(b) (emphasis added). Whether and when public
17 entities are covered by the Unruh Act is well-litigated.
18       Some courts have exempted public entities from Unruh Act
19 liability. However, these cases do not stand for the categorical
20 rule proposed by Defendants that "public entities are not
21 considered business entities under the Act." Mot. at 5. The
22 cases cited by Defendants only deal with state prisons or
23 legislative acts, not actions taken by counties or law
24 enforcement agencies. See, e.g., Qualified Patients Ass'n v.
25 City of Anaheim, 187 Cal.App.4th 734, 765 (2010) ("Because the
26 terms of the Unruh Act expressly apply to business
27 establishments, we see no room for its application to the city's
28 legislative action here."); Carter v. City of Los Angeles, 224

4

1  Cal.App.4th 808, 825 (2014) ("A state prison is not a business
2  establishment for purposes of the act unless it engages in
3  behavior involving sufficient businesslike attributes.");
4  Taormina v. Cal. Dep't of Corr., 946 F. Supp. 829, 834 (S.D. Cal.
5  1996) (stating that "a prison does not qualify as a business
6  entity under Cal. Civ. Code section 51"); Gaston v. Colio, 883 F.
7  Supp. 508 (S.D. Cal. 1995) ("[P]laintiffs cite no authority, nor
8  any reasonable argument, that a state prison qualifies as a
9  'business establishment' for the purposes of the statute.").
10 Defendants have provided the Court with no cases that are
11 directly on point to the case presently before the Court.
12     A more compelling analysis can be found in Gibson v. Cty. of
13 Riverside, 181 F. Supp. 2d 1057, 1090 (C.D. Cal. 2002), in which
14 the District Court concluded that "persons and entities who are
15 not themselves business establishments are subject to" the Unruh
16 Act.  The court pointed out that the text of the Unruh Act
17 clearly states that discrimination is barred "in all business
18 establishments," not by all business establishments.  Id.  The
19 court explained that "the provision only defines *who* is protected
20 and where they shall be free from discrimination; it does not
21 define--and limit--*what* persons are liable for such
22 discrimination."  Id. (emphasis in original).  Moreover, as
23 pointed out by the Gibson court, "*whoever* denies . . . or makes
24 any discrimination or distinction contrary to Section
25 51 . . . is liable."  Id. (citing Cal. Civ. Code § 52(a)
26 (emphasis in original)).  And Section 52(c) describes how to
27 bring a civil action whenever "*any person or group of persons* is
28 engaged in conduct of resistance to the full enjoyment of any of

the rights hereby secured." Id. (citing Cal. Civ. Code § 52(c) (emphasis in original)). This statutory language supports the conclusion that "the term 'business establishments' must properly be interpreted in the broadest sense reasonably possible." Harrison v. City of Rancho Mirage, 243 Cal.App.4th 162, 173 (2015) (citing Curran v. Mount Diablo Council of the Boy Scouts, 17 Cal.4th 670, 689 (1998)).

Several courts have concluded that public entities may be held liable for Unruh Act violations even when they are not strictly considered to be business entities. For example, "public schools are business establishments within the meaning of the Unruh Act." Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist., 964 F. Supp. 1369, 1388 (N.D. Cal. 1997); Walsh v. Tehachapi Unified Sch. Dist., 827 F. Supp. 2d 1107, 1123 (E.D. Cal. 2011) ("[S]everal federal courts have concluded that a plaintiff's allegation that a public school failed to adequately respond to his or her complaints of harassment gives rise to a cognizable claim under the Unruh Civil Rights Act. This Court follows the lead of those courts."). At least one lower state court has similarly concluded that a county's legislative action is also subject to the Unruh Act. Travis v. Cty. of Santa Cruz, 2007 WL 294132, at *14 (Cal. Ct. App. Feb. 2, 2007) ("In the circumstances here, which involve claims of discrimination in housing, we believe the County's Ordinance is subject to the Unruh Act.").

In light of the compelling textual analysis of the Gibson court and the multiple cases finding that public entities may be liable for Unruh Act violations, this Court concludes that

1   Defendants are not exempt from liability for violations of the
2   Unruh Act based on Defendants' argument that "Plaintiff does not
3   allege conduct by any business establishment."  Mot. at 5.
4         The Court also disagrees with Defendants' argument that
5   Alma was required but failed to adequately plead that she was
6   subject to intentional discrimination in public accommodations.
7   Mot. at 5.  Alma specifically pleaded that she was denied "full
8   and equal accommodations."  Compl. ¶ 104 and the Unruh Act does
9   not simply bar discriminatory actions that prevent access to
10  places of public accommodations.  The Act also establishes that
11  all individuals are entitled to equal privileges and services.
12  Cal. Civ. Code § 51.  The allegations set forth in the complaint
13  describe multiple instances in which Defendants failed to
14  provide equal services to Alma because of her sex and/or
15  ethnicity.  Defendants' motion to dismiss the Unruh Act cause of
16  action under this theory is denied as well.

            2.   Negligent Hiring and Supervision; Negligent
                 Training

19        Alma's tenth cause of action for negligent hiring and
20  supervision alleges that Defendants "failed to use reasonable
21  care in hiring and supervising their employees . . . creat[ing]
22  a dangerous environment for the general public, including
23  Plaintiff."  Compl. ¶ 114.  Alma's eleventh cause of action for
24  negligent training alleges that Defendants "neither had in place
25  nor implemented an adequate system or procedure for
26  investigating, training, and supervising employees . . . to
27  prevent or remedy sexual abuse of its citizens."  Id. ¶ 128.
28        Defendants argue that the tenth and eleventh causes of

1 action should be dismissed because they are direct liability
2 claims and "there is no statutory basis for declaring a public
3 entity liable for negligence in its training, hiring, and
4 supervision practices." Mot. at 6-7. Alternatively, Defendants
5 move to strike one or both of the causes of action because they
6 are duplicative. Id. Alma opposes the motion and argues that
7 Defendants had an established duty to protect Alma and "to not
8 expose [her] to the danger of sexual abuse and threats [or]
9 intimidation by its employees." Opp. at 6. Alma contends that
10 the only issue is whether this duty was breached, which is a
11 factual issue that cannot be decided at this stage of the
12 proceeding. Id.

13   California case law makes it clear that public entities are
14 not directly liable for negligent hiring, supervision, or
15 training. de Villers v. Cty. of San Diego, 156 Cal.App.4th 238,
16 252 (2007) ("We find no relevant case law approving a claim for
17 direct liability based on a public entity's allegedly negligent
18 hiring and supervision practices."); Shoval v. Sobzak, 2009 WL
19 2780155, at *4 (S.D. Cal. Aug. 31, 2009) ("California courts have
20 repeatedly held that there is no statutory basis for direct
21 claims against a public entity for negligent hiring and
22 supervision practices."). Yet, as this Court pointed out in
23 Avila v. California, 2015 WL 6003289, at *6 (E.D. Cal. Oct. 14,
24 2015), "public entities can be held *vicariously* liable for the
25 conduct of their employees when committed within the scope of
26 their employment." (emphasis added). California law
27 specifically states that a "public entity is liable for injury
28 proximately caused by an act or omission of an employee of the

public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2.

Alma clearly alleges that Defendants are vicariously liable pursuant to Section 815.2. Compl. ¶¶ 111, 123 ("Plaintiff also contends that Defendants are vicariously liable for the tortious sexual acts of Defendant Nulick flowing from his employment with Defendants."). However, "in order to state a proper claim for negligent hiring or supervision" based on vicarious liability against a public entity, the plaintiff "must identify, if not join, the specific employee whose negligence is alleged and the specific negligent conduct underlying the claim." Avila, 2015 WL 6003289, at *6. Alma has not satisfied this pleading requirement and therefore the motion to dismiss the tenth and eleventh causes of action is granted. Because Alma might be able to cure this defect, the Court dismisses these two causes of action without prejudice and with leave to amend. Eminence Capital, LLC v. Aspeon Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.").

### 3. Negligent Infliction of Emotional Distress

Defendants move to dismiss Alma's twelfth cause of action for negligent infliction of emotional distress ("NIED"), arguing that Alma has not adequately pleaded facts that would support either a bystander or non-bystander NIED claim. Mot. at 7-8. Alma opposes dismissal by arguing that an employer may be

vicariously liable for the torts of its employees and that Alma has therefore pled sufficient facts to state an NIED claim. Opp. at 7.

NIED is not an independent tort in California, but a subset of negligence. Burgess v. Superior Court, 2 Cal.4th 1064, 1072 (1992). As such, plaintiffs must adequately plead the "traditional elements of duty, breach of duty, causation, and damages." Id.; Hall v. Apollo Grp., Inc., 2014 WL 4354420, at *6 (N.D. Cal. Sept. 2, 2014) ("The elements of a claim of negligent infliction of emotional distress are: (1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress; and (3) the defendants' negligent conduct was a cause of the serious emotional distress").

There are two possible theories of liability in an NIED cause of action: the bystander theory and the direct victim theory. Burgess, 2 Cal.4th at 1071. Alma does not seek relief under a bystander theory because she alleges that she was directly harmed, not harmed due to witnessing another's injury. Instead, Alma seeks relief under the direct victim theory. In direct victim cases, a duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 985 (1993); Burgess, 2 Cal.4th at 1073 (liability for NIED can be imposed for "a breach of duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two"). Additionally, "public policy considerations are relevant in determining whether a particular plaintiff may recover damages for emotional

distress." <u>Christensen v. Superior Court</u>, 54 Cal.3d 868, 885 (1991).

> [I]n considering the existence of 'duty' in a given case several factors require consideration including the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

<u>Id.</u> at 885-86 (1991) (citations omitted).

Here, Defendants seek dismissal of this cause of action solely for the reason that "Plaintiff does not allege any . . . factual circumstances" that may give rise to a direct liability NIED claim, including the "negligent breach of a duty arising out of a preexisting relationship." Mot. at 7-8. However, Alma has clearly alleged that Defendants had a special relationship with Alma and that Nulick was responsible for maintaining this relationship. Compl. ¶ 136. Alma further alleges that a duty may have been assumed by Defendants. <u>Id.</u> ¶¶ 136-138. Additionally, the <u>Christensen</u> factors weigh in favor of concluding that a duty may be imposed in this case. The alleged emotional harm caused by Defendants' actions was foreseeable and certain, the alleged actions are morally blameworthy, and the possibility of preventing future harm is compelling. For these reasons, the Court denies Defendants' motion to dismiss the NIED cause of action.

III.   ORDER

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss the tenth and eleventh causes of action with leave to amend and DENIES Defendants' motion to dismiss the ninth and twelfth causes of action.  If Alma desires to cure the defects identified in her tenth and/or eleventh causes of action, Alma's amended complaint must be filed within twenty days from the date of this Order.  Defendants' responsive pleadings are due within twenty days thereafter.  The Court advises that failure to cure the defects identified in this Order may be grounds for dismissal of those claims without further leave to amend.  <u>Dick v. Am. Home Mortgage Servicing, Inc.</u>, 2013 WL 5299180, at *6 (E.D. Cal. 2013).

IT IS SO ORDERED.

Dated: May 11, 2016

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE